Filed 9/21/23  Wickline v. Schweder CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID WICKLINE, | D080074 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1708891) |
| INGO SCHWEDER et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Riverside County, Randall S. Stamen and John W. Vineyard, Judges.  Reversed in part and remanded.

Complex Appellate Litigation Group, Rex S. Heinke and Jessica M. Weisel for Plaintiff and Appellant.

Carlton Fields, Ellyn S. Garofalo and Amir Kaltgrad for Defendants and Respondents.


This is an appeal of a declaratory judgment entered by the trial court in a lawsuit brought by David Wickline against Ingo Schweder and other parties based on Wickline's allegation that Schweder failed to honor the

partnership that the two men entered into with one another involving the acquisition and ownership of the Glen Ivy Hot Springs resort in Corona, California.

The trial court proceedings that led to this appeal occurred in two steps. First, although Schweder denied he formed any partnership with Wickline, after a lengthy trial on Wickline's causes of action for breach of fiduciary duty and fraudulent inducement of partnership agreement, a jury disagreed. Specifically, the jury returned a special verdict finding that Wickline and Schweder *had* formed a partnership. However, the jury was not asked to make any findings as to the nature of the partnership or whether it was ongoing. Next, the trial court decided Wickline's causes of action for declaratory relief and promissory estoppel. Among other things, Wickline sought a declaration as to the nature of the partnership found by the jury. In its statement of decision on the declaratory relief cause of action, the trial court specified the nature of the partnership entered into by Wickline and Schweder, but it also concluded that "[t]he partnership between [Wickline] and [Schweder] terminated on June 16, 2016."

Wickline appeals from the portion of the declaratory judgment stating that the partnership terminated. According to Wickline, the termination of a partnership under the Corporations Code (Corp. Code, § 16802) occurs only when specific statutory requirements are met. As Wickline argues, those requirements were not satisfied here.

Respondents do not attempt to argue that the statutory requirements for termination of a partnership were met. Instead, respondents present two main arguments. First, they contend that the law of the British Virgin Islands controls the issue of whether the partnership was terminated, not the California statutory provisions relied upon by Wickline. We reject that argument because the trial court ruled that Wickline and Schweder entered

2

into a partnership with a legal existence that is distinct from the British Virgin Islands company that ultimately owns the Glen Ivy Hot Springs resort. Second, respondents contend that, even if California law applies, it would be an exercise in futility for us to entertain this appeal because Wickline will not be able to benefit from a ruling that the partnership is ongoing rather than terminated. In making that argument, respondents venture far afield into scenarios of hypothetical steps that Wickline might take after obtaining the simple relief he seeks in this appeal: an appellate opinion vacating a legally-erroneous declaratory judgment.

We are not concerned in this appeal with what steps Wickline might *later* be able to take to enforce his rights once he obtains a ruling that the partnership has not terminated. This appeal comes to us from a declaratory judgment. Wickline is entitled to *a legally-correct* declaration of his rights in the partnership, and we can grant that relief by deciding this appeal.

Turning to the question of whether the trial court erred in ruling that the partnership terminated, the trial court's ruling is fatally unclear as to the meaning of the word "terminated." The trial court indicated at a hearing prior to finalizing its statement of decision that "the Court uses the term '*terminated*' because it is a term which both the plaintiff and defendant used repeatedly in the past." (Italics added.) If that is the case, the trial court meant either that (1) the partnership was terminated pursuant to the requirements for partnership termination set forth in the applicable part of the Corporations Code; or (2) the partnership was terminated by the fact that Wickline filed this lawsuit in which he sought legal damages based on Schweder's alleged repudiation of the partnership. If the trial court intended either of those meanings, it erred. It is possible, however, that that trial court intended to refer to termination of the partnership in a different sense. For example, respondents suggest that the trial court simply meant that as of

3

June 16, 2016, "any ability for Wickline and Schweder to work together terminated." If the trial court did intend a different meaning, it must provide clarification on remand. We accordingly vacate the declaratory judgment, and we remand for the trial court to hold further proceedings consistent with this opinion.

Wickline also appeals from the trial court's award of costs to respondents after determining they were the prevailing parties. Because we are vacating the declaratory judgment, it is possible that the trial court will come to a different conclusion regarding the award of costs on remand. We accordingly vacate the trial court's award of costs to respondents, and we remand for further proceedings on that issue.

I.

FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises as a result of the business relationship between Wickline and Schweder. Wickline previously worked as an investment banker at JP Morgan and Goldman Sachs and has experience developing resorts. Schweder has spent his career involved in the hospitality and wellness industry, and he runs a business that consults for, operates and designs spas around the world under the "GOCO Hospitality" brand.[1]

Wickline and Schweder first met in the mid-2000's. They agreed in 2014 to start working together to try to purchase and own wellness resorts. Wickline's background gave him the expertise to locate funding for the venture. The efforts of Wickline and Schweder culminated in the successful purchase of the Glen Ivy Hot Springs resort in January 2016.

---

[1]     As the trial court explained, "[m]any of the business entities in which [Schweder] was involved included GOCO in their names."

4

As required by the lender, the purchase transaction was structured through several layers of corporate ownership. The resort being purchased was owned by a California corporation, Glen Ivy Hot Springs, Inc. As the trial court described, "[the lender] required that 100% of the shares of the existing owners of Glen Ivy Hot Springs, Inc., be transferred into a single purpose entity formed to own the shares, GOCO Hospitality California, [Inc.,] a California corporation. GOCO Hospitality Global Opportunity Limited, a British Virgin Islands company [(GOCO BVI)], was to own 100% of the shares of GOCO Hospitality California, [Inc.]" GOCO BVI was a preexisting inactive "shelf company" that, at the time, was 100 percent owned by Schweder as the sole shareholder. As the trial court explained, GOCO BVI was "utilized for the purchase for tax purposes and other reasons."

The evidence at trial included documented discussion about the parties' agreement that Wickline would become a 42.5 percent shareholder of GOCO BVI. For example, the trial court found that in a December 2015 string of e-mails Wickline and Schweder "confirmed that after the sale of the Resort: 42.5 percent of the shares of [GOCO BVI] would be transferred to [Wickline], 42.5 percent of the shares would be transferred to [Schweder,] and, the remaining shares reserved for later transfer to the company's key representatives and managers." However, it is undisputed that Wickline never became a shareholder of GOCO BVI.

At trial, the jury heard only a very brief explanation of why no shares in GOCO BVI were transferred to Wickline upon the January 2016 sale of the resort. Specifically, the jury was read a stipulation stating that from May 2011 to April 2017, Wickline was a judgment debtor as a result of an unrelated lawsuit for "a substantial amount." Schweder's former director of finance, Matthew Brennan, testified that shortly after the purchase of the resort, the ownership of GOCO BVI was reorganized so that Schweder owned

5

94 percent, Josephine Leung owned three percent,[2] and Brennan owned three percent. Brennan testified that Wickline's judgment debtor status was the reason that Wickline did not take a 42.5 ownership interest in GOCO BVI in 2016. "My understanding at that time, which was consistent with December [2015] as well, was that [Wickline] did not want to have ownership of the shares of GOCO BVI because of his lawsuit that he was having in -- in 2015." Brennan did not know whether Wickline's forfeiting of his shares was meant to be permanent or temporary.

Wickline's operative complaint directly alleged that his judgment debtor status was the reason that his ownership interest in GOGO BVI was not formally recorded upon the purchase of the resort. Specifically, Wickline pled, and then dismissed without prejudice prior to trial, a cause of action for breach of contract alleging that "Schweder . . . agreed to operate the resort post-closing, and to hold for [Wickline], and recognize upon the resolution of that unrelated adverse judgment, [Wickline's] 42.5 percent ownership of that resort property." Although the jury did not hear evidence about any such alleged agreement, it was discussed at length during in limine motions, with an eventual stipulation that the jury not be presented with evidence of the alleged agreement. During in limine discussions, counsel for Wickline specified that although he would not ask the jury to award shares in GOCO BVI, "[w]e have a declaratory relief claim that's not before the jury." That declaratory relief claim is the subject of this appeal.

---

2    Leung is married to Schweder and works for the GOCO Hospitality business as the group director of design and development. As of the date of the trial in 2019, after having purchased Brennan's three percent interest, Leung owned six percent of the shares of GOCO BVI, and Schweder owned 94 percent.

The relationship between Schweder and Wickline started to deteriorate in May 2016, a few months after the January 2016 purchase of the resort. The friction between the men is documented in several e-mails that the trial court described in its statement of decision:[3]

> "In May 2016, [Wickline] requested reimbursement for expenses. That resulted in an exchange of e-mail between [Wickline] and [Schweder]. In an e-mail of May 20, 2016, by [Schweder] to [Wickline], [Schweder] stated: 'We Will honor everything we agreed upon ! but I prefer to not have a partner who seeks a different way of doing things and who does not seem to be content with gocos more frugal approach to matters. Money is by no means all what counts for me and your aggression and words( not only in your mail ) unacceptable to me. GOCO will refrain from participating in Vegas and Santa Fe. Pls don't send related mails to my GOCO mail as my secy reads them . . . , And the staff talks. Also pls refrain from voicing your issues to my team as done in the past and today.' [Citation to trial exhibit.]

> "An e-mail of May 23, 2016, from [Schweder] to [Wickline], concerned whether [Wickline] and [Schweder] had agreed to bear their own expenses in connection with their partnership and concerned [Wickline's] leadership skills, propensity to act and make decisions unilaterally and outside of the business structure, rather than as part of a team and within the business structure. [Citation to trial exhibit.] The exchange included the statement by [Schweder] that, '[y]ou constantly complain about not earning enough money and feel that your 42.5% is not sufficient.' [Citation to trial exhibit.]

> "On June 16, 2016, [Wickline] sent an e-mail to himself wherein he memorialized that he: intended to sue [Schweder]; needed to work with an attorney to insure evidence he gathered would be admissible at trial so [Schweder] 'hangs himself'; perform just enough to make the status of his involvement in partnership/Resort unclear; and, withhold his most valuable

---

[3]    We have corrected the typos in the trial court's statement of decision to match the text of the original e-mails from which the trial court quoted (which themselves contain several typos).

7

skills and not perform some of his duties.  [Citation to trial exhibit.]  In August 2016, [Schweder's] counsel sent a partnership termination letter to [Wickline's] counsel ('supplementing' the e-mail [Schweder] sent to [Wickline] on May 20, 2016)."[4]

On May 17, 2017, Wickline filed a lawsuit against the following parties: Schweder, Leung, GOCO BVI, Spa Venture Group Limited,[5] GOCO Hospitality California, Inc., and Glen Ivy Hot Springs[6] (collectively, Respondents).  The operative second amended complaint alleged the following causes of action:  fraud, civil conspiracy, breach of fiduciary duty, fraudulent inducement of partnership agreement, breach of contract,

---

[4]     Specifically, the letter from counsel stated, "As you know, my clients wish to sever their relationship with Mr. Wickline.  You and I previously discussed the option of an early mediation to resolve issues relating to Mr. Wickline's involvement with Glen Ivy.  Although you indicated in our initial call, that Mr. Wickline might be amenable to this approach, I am still waiting for a response.  In the meantime, we have asked that Mr. Wickline cease all activities in connection with Goco Hospitality and Glen Ivy.  As you can see from the emails below, Mr. Wickline is insisting on attending a . . . hearing on Glen Ivy entitlements.  Mr. Wickline is not a Goco shareholder and is not authorized to speak or act on Goco's behalf.  Please instruct Mr. Wickline not to attend the hearing and certainly not to make any statements or representations on Goco's behalf."

[5]     Spa Venture Group Limited, which is owned by Schweder and Leung, is the entity that is paid to manage the Glen Ivy Hot Springs resort.  The second amended complaint alleges that Spa Venture Group Limited is a British Virgin Islands company.

[6]     The second amended complaint alleges that the entity sued as "Glen Ivy Hot Springs" (also referred to in that document as "GIHS") is a "California company."

8

declaratory relief, and promissory estoppel.[7]  Before trial, Wickline voluntarily dismissed the fraud, civil conspiracy, and breach of contract causes of action without prejudice.

The trial court decided that the two "legal causes of action" (breach of fiduciary duty and fraudulent inducement of partnership agreement, both asserted solely against Schweder) would be tried to a jury at the same time that the two "equitable causes of action" (declaratory relief and promissory estoppel) were tried to the court.  The trial was held over the course of several weeks in February, March and April 2019.

At trial, Schweder testified that he did not enter into a partnership with Wickline.  He further contended that his deal with Wickline regarding the Glen Ivy Hot Springs resort was that Wickline would be given 42.5 percent of GOCO BVI *only if* Wickline managed to locate investor funding for the resort.  However, because Wickline failed to do so, and instead obtained a loan to effectuate the purchase of the resort, Wickline was not entitled to any shares in GOCO BVI.  Wickline, in contrast, testified that he entered into a partnership with Schweder, and that their agreement regarding the Glen Ivy Hot Springs resort was that Wickline would receive a 42.5 percent share in GOCO BVI.  During closing argument, counsel for Wickline argued to the jury that Schweder breached his fiduciary duty to Wickline as a partner because he "froze [Wickline] out" of the business.  Counsel also argued that Schweder made fraudulent misrepresentations to Wickline to cause Wickline to enter into a partnership with him.

---

7    All of the Respondents were sued in the declaratory relief cause of action.  Accordingly, they are all parties in Wickline's appeal from the declaratory judgment.

Rather than being asked to return a general verdict on the two legal causes of action, the jury was asked to return a special verdict on a series of factual questions. In answering those questions, the jury found that Schweder and Wickline *did* form a partnership (of an unspecified nature), but the jury's remaining findings meant that Wickline did not prevail on either of his legal causes of action. Specifically, the jury's answers on the special verdict form were as follows:

> "1. Do you find that Plaintiff David Wickline and Defendant Ingo Schweder formed a partnership?" [¶] [Answer: Yes]
>
> "[¶] . . . [¶]
>
> "2. Did Defendant Ingo Schweder knowingly act against Plaintiff David Wickline's interests in connection with the business of their partnership? [¶] [Answer: No.]
>
> "[¶] . . . [¶]
>
> "6. Did Defendant Ingo Schweder make a false representation of fact to Plaintiff David Wickline? [¶] [Answer: Yes]
>
> "[¶] . . . [¶]
>
> "7. Did Defendant Ingo Schweder know that the representation was false when he made it to Plaintiff David Wickline or did he make the representation recklessly and without regard for its truth? [Answer: No.]"[8]

---

[8] Respondents attempt to characterize the jury's verdict as "impliedly" finding "that in June 2016, Schweder and [Wickline] were not partners in an ongoing or existing partnership." We disagree with that characterization. The jury was not asked to decide whether and when the partnership terminated. There are many bases on which the jury could have found that Schweder did not knowingly act against Wickline's interests in the business of the partnership, without concluding that the partnership terminated in June 2016. For example, as Wickline posited in his written rebuttal closing argument to the trial court, "The logical conclusion, given the evidence at trial and the jury's answers to verdict form questions 1 and 2, is the jury

10

Thereafter, the parties submitted written closing arguments to the trial court on the declaratory relief and promissory estoppel causes of action. The trial court issued a tentative ruling on December 16, 2020, followed by a "Ruling and Statement of Decision on Equitable Causes of Action" (Statement of Decision) on May 4, 2021.[9]

In the Statement of Decision, the trial court determined it was bound by the jury's finding that Schweder and Wickline formed a partnership. The trial court also described the history of the business relationship between Schweder and Wickline, in which it identified the nature of the partnership found by the jury:

> "The business of the partnership initially was the establishment and operation of an equity fund named GOCO Asset Management. . . . [¶] GOCO Asset Management would purchase and own vacation resorts which would focus on the personal wellness of their guests. [Wickline] and [Schweder] would each own 42.5% of GOCO Asset Management and be the only voting shareholders. . . . [¶] [Wickline] did not raise any capital at any point in time. [¶] [Wickline] did locate a resort which was for sale, Glen Ivy Hot Springs, in Corona, California (the 'Resort'), which was owned by Glen Ivy Hot Springs, Inc., a California

concluded that (i) [Wickline] and Schweder were partners in the Resort, but (ii) rather than Schweder forcing [Wickline] out of the Resort, [Wickline] and Schweder had a falling out that resulted in [Wickline] filing this lawsuit soon thereafter."

[9]    At the direction of the trial court, Respondents submitted a proposed statement of decision, to which Wickline filed objections, along with his own suggested revisions to Respondents' proposed statement of decision. The trial court held a hearing on April 23, 2021, after receiving those filings. At that hearing, the trial court made several statements clarifying its intended ruling, which we will discuss in more detail during our legal analysis. Thereafter, the trial court issued its Statement of Decision using substantially the same language as its tentative ruling, stating that it did "not care for" the parties' proposals.

11

corporation. . . . At that point, the terms of [Wickline's] and [Schweder's] partnership changed and narrowed. The partnership focused on the acquisition of the Resort. [¶] . . . [¶] In an e-mail string . . . which occurred as a result of questions by an attorney who assisted in structuring the Resort transaction . . . [Wickline] and [Schweder] reaffirmed their partnership agreement. They confirmed that after the sale of the Resort: 42.5 percent of the shares of [GOCO BVI] would be transferred to [Wickline], 42.5 percent of the shares would be transferred to [Schweder]; and, the remaining shares reserved for later transfer to the company's key representatives and managers."

The trial court then set forth the following specific declaratory relief to address the items set forth in paragraph 104 of the declaratory relief cause of action in the second amended complaint:[10]

---

[10] The cause of action for declaratory relief in the second amended complaint stated as follows:

"103. [Wickline] therefore requests a full and final judicial determination of his rights and responsibilities with respect to the Glen Ivy Hot Springs resort, including each and all of Defendants GOCO Hospitality, GOCO CA, Spa Venture, and GIHS.
"104. [Wickline] hereby requests a judicial determination and order establishing his rightful claim to the following:
    "a. [Wickline] is at least a 42.5 percent owner of GOCO Hospitality.
    "b. [Wickline] is at least a 42.5 percent owner of GOCO CA.
    "c. [Wickline] is at least a 42.5 percent owner of Spa Venture.
    "d. [Wickline] is at least a 42.5 percent owner of GIHS.
    "e. [Wickline] is entitled to at least 50 percent of the voting rights of each of the entities described in paragraphs 104 (a) through (d).
    "f. No shareholder(s) other than [Wickline] and [Schweder] is or are entitled to voting rights.
    "g. [Wickline] is entitled to co-management of each of the entities described . . . .
    "h. [Wickline] is entitled to full reimbursement of any and all

12

"1)     [Wickline] and [Schweder] entered into a partnership (pursuant to the agreement of [Wickline] and [Schweder], that the Court is bound by the Jury's finding that Plaintiff and [Schweder] formed a partnership).

"2)     [Wickline's] and [Schweder's] oral partnership agreement provided that [Wickline] and [Schweder] would each bear their own expenses in carrying out their partnership duties.  [Wickline] and [Schweder] did not discuss or agree on the payment of salaries to the themselves.  Hence, [Wickline] is not entitled to reimbursement for any expenses he may have incurred relating to his negotiation and eventual acquisition of the Glen Ivy property or back pay.

"3)     As confirmed by [Wickline] and [Schweder], the partnership was only in GOCO Hospitality Global Opportunity Limited, a British Virgin Islands company [i.e., GOCO BVI], with each owning a 42.5% interest/shares in it and that only [Wickline's] and [Schweder's] interest/shares had voting rights.

"4)     The Partnership between [Wickline] and [Schweder] terminated on June 16, 2016.  The Court bases this ruling on its findings that:  1) between May 16, 2016, and August 2016, [Wickline's] and [Schweder's] conduct made it not reasonably practical for [Wickline] and [Schweder] to carry on the business of the partnership together; 2) [Wickline] hid the fact that he was withholding his skills and not performing all of his duties to the partnership, thereby breaching his fiduciary duty to [Schweder]; and, [Schweder] intended to terminate the partnership on May 20, 2016.  The court notes that the jury expressly found that

---

expenses reasonably incurred on behalf of Defendants relating to his negotiation and eventual acquisition of the Glen Ivy property.
"i. [Wickline] is entitled to back pay in an amount to be proven at trial.
"j. [Wickline] is entitled to at least 42.5 percent of any and all profits in the Glen Ivy resort project since January 2016."

13

[Schweder] did not knowingly act against [Wickline's] interest in connection with the business of the partnership. . . .

"5)    [Wickline] and [Schweder] are not partners in the Glen Ivy Hot Springs resort, Glen Ivy Hot Springs resort real property, the Glen Ivy Hot Springs resort business, GOCO California, a California corporation, or any other defendant business entity. . . .

"6)    As to paragraph 104 (j) of the declaratory relief cause of action, the term 'Glen Ivy resort project' is vague and ambiguous given the number of business entities, their alleged dealings with each other and with [Wickline] and [Schweder], and the testimony of [Wickline], [Schweder], and witnesses.  This portion of the cause of action is uncertain and inappropriate for declaratory relief."[11]

The minute order describing the Statement of Decision (and referring to that document for "[a]dditional, detailed rulings") summarized the trial court as having ruled that "[Wickline] and [Schweder] each had a 42.5% ownership interest/shares in [GOCO BVI].  [Wickline's] and [Schweder's] interest/shares were the only voting interest/shares.  The partnership between [Wickline] and [Schweder] terminated on June 16 , 2016."

The trial court's judgment, entered on July 9, 2021, repeated the Statement of Decision's six specific declaratory relief rulings that we have set forth above, along with the rejection of the promissory estoppel claim.  The judgment also set forth the jury's verdict on the legal causes of action, and it specified that Respondents were the prevailing parties and were therefore

_____

[11]    The trial court also rejected Wickline's promissory estoppel cause of action, ruling that "[i]n light of the above rulings and findings by the Court, a bulk of the allegations asserted in the cause of action are unfounded."

14

entitled to costs pursuant to Code of Civil Procedure sections 685.090 and 1032, subdivision (b).[12]

Wickline filed a notice of appeal from the judgment and from the award of costs.

## II.

## DISCUSSION

A.    *Wickline's Appeal of the Declaratory Judgment That the Partnership Terminated*

Wickline's appeal targets one discrete aspect of the trial court's declaratory judgment.  Specifically, Wickline contends that the trial court committed legal error in ruling that "[t]he Partnership between [Wickline] and [Schweder] terminated on June 16, 2016."

On the surface, Wickline's argument is relatively simple and straightforward.  As Wickline argues, because it is a partnership, the business relationship between him and Schweder is governed by the Revised Uniform Partnership Act (Corp. Code, § 16100 et seq.) (RUPA).[13]  RUPA sets forth the exclusive steps that must occur for a partnership to be terminated:

---

[12]    On November 17, 2021, the trial court partially granted Wickline's motion to tax costs.

[13]    Although identified in the statute as "the Uniform Partnership Act of 1994" (Corp. Code, § 16100), the statutory enactment at issue here is commonly referred to in case law as RUPA.  (See, e.g., *Heller Ehrman LLP v. Davis Wright Tremaine LLP* (2018) 4 Cal.5th 467, 475.)  The name is used because "[t]he basis of California's statute was a revised uniform partnership act (RUPA or the model act), first approved and recommended for adoption in all states by the National Conference of Commissioners on Uniform State Laws (the Conference) in 1992, and again, with revisions, in 1994."  (*Han v. Hallberg* (2019) 35 Cal.App.5th 621, 633; see also 9 Witkin, Summary of Cal. Law (11th ed. 2017) Partnership, § 18, p. 606 ["In 1996, the California Legislature enacted the Revised Uniform Partnership Act (RUPA), with modifications, entitled the Uniform Partnership Act of 1994."].)

namely dissolution followed by a winding up.  (*Id.*, § 16801, 16802.)  Those steps were not completed in this case.  Therefore, according to Wickline, the trial court erred in finding a termination.  Wickline argues that the appellate remedy is for us to vacate the trial court's declaratory judgment and to remand for further proceedings.

Respondents do not attempt to argue that a termination of the partnership occurred according to the steps set forth in RUPA.  Instead, they argue that regardless of whether RUPA was followed, Wickline should not prevail on this appeal because (1) RUPA does not apply to a British Virgin Islands "corporation" such as GOCO BVI; and (2) even if Wickline shows the trial court erred in determining that the partnership was terminated, Wickline cannot establish any prejudice from that erroneous ruling, giving him no right to an appellate opinion vacating the declaratory judgment.

We proceed by first examining Wickline's contention that the trial court committed legal error in determining that the partnership terminated pursuant to RUPA.  As part of that analysis, we will be required to consider Respondents' contention that RUPA does not apply.  We will then address Respondents' contention that we should not issue an opinion in Wickline's favor vacating the erroneous declaratory judgment because Wickline has not identified any *prejudicial* error by the trial court.

1. *As a Preliminary Step, We Must Ascertain the Meaning of the Trial Court's Ruling*

Turning to the question of whether the trial court erred in stating that the partnership between Wickline and Schweder terminated on June 16, 2016, we must attempt to clarify the trial court's meaning as to two important points that are crucial to our analysis.  In particular, before undertaking our legal analysis, we must attempt to discern what the trial court meant when it stated (1) the partnership between Wickline and

16

Schweder "was only in [GOCO BVI], with each owning a 42.5% interest/shares in it"; and (2) the partnership "terminated" on a specific date.

### a. *Clarification of What the Trial Court Meant by Stating That the Partnership Was "In" GOCO BVI*

The trial court's statement the partnership between Wickline and Schweder "was only *in* [GOCO BVI], with each owning a 42.5% interest/shares in it" (italics added) needs clarification. On its face, it is not clear what the trial court meant by stating that the partnership was "*in*" an entity, GOCO BVI, that is not a partnership itself, but rather is a legal entity created under the British Virgin Island's Business Companies Act.[14] However, as we will explain, two other statements by the trial court provide clarification of the trial court's meaning.

First, when discussing the relevant factual background, the trial court's Statement of Decision set forth a more specific description of the partnership agreement: "[Wickline] and [Schweder] reaffirmed their partnership agreement. They confirmed that after the sale of the Resort: 42.5 percent of the shares of [GOCO BVI] would be transferred to [Wickline], [and] 42.5 percent of the shares would be transferred to [Schweder]."

Second, at an April 23, 2021 hearing after the filing of Respondents' proposed statement of decision and Wickline's objections, the trial court discussed the meaning of its tentative ruling.[15] The trial court twice stated

---

[14] The appellate record contains the Memorandum of Association and the Articles of Association for GOCO BVI, which show it was formed under the British Virgin Island's Business Companies Act of 2004 as a "company limited by shares." Respondents have filed a request that we take judicial notice of the British Virgin Island's Business Companies Act of 2004 and the British Virgin Island's Limited Partnership Act. We grant the request.

[15] Because the trial court ended up adopting the tentative ruling, in substance, as its Statement of Decision, we view the trial court's explanation

17

that the partnership between Wickline and Schweder "*manifested itself in* [GOCO BVI]." (Italics added.)

These statements clarify the meaning of the trial court's ruling that the partnership was "in" GOCO BVI. California defines a partnership as "an association of two or more persons to carry on as coowners a business for profit . . . ." (Corp. Code § 16101, subd. (a)(9).) As we understand the trial court's ruling, Wickline and Schweder formed a partnership involving the acquisition and ownership of the Glen Ivy Hot Springs resort, which they agreed would be expressed by Wickline taking a 42.5 percent ownership interest in GOCO BVI. This was because GOCO BVI was the parent entity that owned GOCO Hospitality California, a California corporation, which in turn owned the resort. Contrary to Respondents' suggestion, the trial court did not rule that the partnership formed by Wickline and Schweder was *identical* to GOCO BVI. Instead, it ruled that the manifestation of Wickline's partnership stake would be through a 42.5 percent interest in the parent entity, GOCO BVI.

Having defined what the trial court meant by the partnership "in" GOCO BVI, we are able to address Respondents' contention that the law of the British Virgin Islands, rather than the California Corporations Code, governs whether the partnership was terminated. Respondents argue, "any failure to comply with RUPA is immaterial as the court could not have dissolved GOCO BVI under the authority of RUPA, as that statute does not apply to a [British Virgin Islands] corporation. [¶] . . . While RUPA may provide the 'exclusive means' for dissolving a *California partnership*, it cannot apply to a corporation subject to [British Virgin Islands] law . . . ."

---

at the April 23, 2021 hearing about the meaning of the tentative ruling to provide clarification for what the trial court intended in the Statement of Decision.

Specifically, Respondents contend that because GOCO BVI is a corporate entity created under the British Virgin Island's Business Companies Act of 2004, that law should also govern issues of dissolution, termination, and the distribution of profits to shareholders.

The argument fails because, as we have determined, there is a distinction between (1) the partnership formed by Wickline and Schweder for the purpose of acquiring and owning the resort; and (2) the British Virgin Islands entity, GOCO BVI. Because the partnership itself is a free-standing legal relationship entered into by Wickline and Schweder, it is distinct from the British Virgin Islands company GOCO BVI, and the legal requirements for the termination of the partnership are not governed by the law of the British Virgin Islands.

Having rejected Respondents' contention that the British Virgin Island's Business Companies Act of 2004 applies here, the next question is whether, as Wickline contends, California law governs the issue of partnership termination. RUPA provides that with certain inapplicable exceptions, "the law of the jurisdiction in which a partnership has its principal office governs relations among the partners and between the partners and the partnership." (Corp. Code, § 16106, subd. (a).) As the trial court found, the business of the partnership was the acquisition and ownership of the Glen Ivy Hot Springs resort, which is located in California. Although Respondents argue that the law of the British Virgin Islands applies, that argument is based solely on the premise that the partnership formed by Wickline and Schweder was *identical* to the British Virgin Island's corporation, GOCO BVI. Respondents have not argued that, *if* the partnership is *distinct* from the corporate entity, it would be governed by the law of a jurisdiction other than California. As no party has identified any

19

location for the partnership's "principal office" other than California, we apply California law in analyzing whether the partnership terminated.[16]

b.    *Clarification of What the Trial Court Meant by Stating That the Partnership "Terminated"*

The second aspect of the trial court's ruling that requires clarification is what the trial court meant when it stated that the partnership "terminated" on a specific date, i.e., June 16, 2016. Although the text of the trial court's Statement of Decision does not reveal what the trial court meant when it said that the partnership "terminated," three different statements made by the trial court at the April 23, 2021 hearing are of some assistance.

First, apparently in response to Wickline's written argument that a dissolution had not occurred and that the trial court was "confus[ing] two terms of art: dissolution and termination," the trial court stated at the April 23, 2021 hearing that its ruling was *not* addressing whether the partnership

---

[16]    In a footnote to their appellate brief, Respondents refer to the British Virgin Islands Limited Partnership Act, and we have granted their request for judicial notice of that law. However, we do not perceive Respondents to be arguing that the partnership formed by Wickline and Schweder is governed by that law. If Respondents intended to make such an argument, they were required by appellate rules to set forth the argument in a specific argument heading and to support it with citation to authority and the record, which they failed to do. (Cal. Rules of Court, rule 8.204(a)(1)(B) [A party's brief must "[s]tate each point under a separate heading or subheading . . . , and support each point by argument and, if possible, by citation of authority."]; *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."].) Moreover, having reviewed the British Virgin Islands Limited Partnership Act that Respondents submitted to us, the partnership at issue here was plainly not formed according to the requirements of that law. Among other things, a partnership formed under the British Virgin Islands Limited Partnership Act requires registration of the partnership (*id.*, § 4), of which there is no evidence here.

20

was dissolved. The trial court explained, "The Court is not confusing the terms 'termination' and 'dissolution.' Once again, the second amended Complaint does not contain a cause of action for dissolution. Dissolution is not included among the ten rights and responsibilities which [Wickline] requested the Court address in the declaratory relief cause of action." In his appellate brief, Wickline posits that the trial court may have meant that the partnership was *dissolved* (as that term is used in RUPA), but not that it was terminated. He devotes a considerable portion of his appellate brief to that issue. However, based on its statement at the April 23, 2021 hearing we conclude that the trial court did not intend to rule that partnership was dissolved.

Next, in the trial court, Wickline argued in his written objections to the proposed statement of decision that he "lost everything and received nothing for his 42.5% direct ownership of GOCO BVI and indirect ownership of the Resort," but that, by ruling that the partnership terminated, the trial court "would have [Wickline's] partnership interest simply vanish, with Schweder being gifted [Wickline's] interest for free." The trial court replied at the April 23, 2021 hearing with the following observation: "[Wickline] contends that the tentative ruling provides that any interest which it has or had in [GOCO BVI], simply have vanished. As [Wickline] put it in its objections to [the] proposed final statement of decision, this Court would have [Wickline's] partnership interest simply vanish. The tentative ruling does not include that at all. The tentative ruling simply indicates that the partnership between plaintiff and defendant which manifested itself in [GOCO BVI], terminated on June 16th, 2016." Based on this statement, it appears that whatever the trial court meant by "terminated," it intended a legal status under which Wickline could *still* have a partnership interest.

21

Finally, the trial court stated at the April 23, 2021 hearing that "the Court uses the term '*terminated*' because it is a term which both the plaintiff and defendant used repeatedly in the past." (Italics added.) Based on this statement, we have reviewed the record to determine how the parties used the word "terminated" in the briefing leading up the April 23, 2021 hearing.[17] As we will explain, Wickline and Respondents both used the word "terminated," but in different ways.

In Wickline's written closing argument, he stated that, because the jury found a partnership, "the only remaining basis for avoiding the declaratory judgment sought by Wickline is to decide that the partnership between Wickline and Schweder was effectively *terminated*." (Italics added.) After making this observation, Wickline argued at length that the partnership could not have terminated because the requirements for partnership termination *under RUPA* were not present. Thus, based on Wickline's use of the word "terminated" in his written closing argument, the trial court could have meant that the partnership terminated based on the statutory requirements set forth in RUPA.

Respondents, in their written closing argument, did not attempt to argue that the statutory requirements for termination under RUPA were present. Instead, Respondents argued that Wickline, himself, "*terminated* the partnership as a matter of law when he elected to sue for damages, in lieu

[17]   To determine how the parties used the word "terminated" prior to the April 23, 2021 hearing, we look to the parties' posttrial written briefing rather than to statements made at trial, as we see no indication that the parties focused on the word "terminated" during trial. There was some discussion during trial about the *conclusion* of the partnership, but different terminology was used. Most notably, Respondents' counsel questioned Wickline as to when the partnership "ended," and the documentary evidence at trial contained a letter from counsel for Schweder to counsel for Wickline in August 2016 stating that Schweder wished to "sever" their relationship.

22

of an accounting and judicial dissolution," and thus he was "not entitled to a declaratory judgment based on the purported – but now unquestionably *terminated* – partnership."[18]  (Bolding and italics omitted; second italics added.)  For this argument, Respondents relied principally on *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 564-565 (*Gherman*), which they characterized as holding that that "[i]n electing to bring legal claims, the wronged partner 'submit[s] to the repudiation' " and thereby "destroys the partnership."

2. *If the Trial Court Intended the Word "Terminated" in Either Sense Used by the Parties, It Erred*

Having identified the two ways in which the parties used the word "terminated" in their written briefing to the trial court, either one of which the trial court may have intended to adopt in its Statement of Decision, we proceed to consider whether there is legal merit to either possible meaning of partnership termination in the context of this case.

a. *The Requirements for Termination of a Partnership Under RUPA Are Not Present*

As we have explained, Wickline used the word "terminated" to refer to partnership termination under RUPA.  As RUPA is structured, it first sets forth the possible methods by which a partnership can be dissolved.  These include, as most relevant here, (1) for a partnership at will (as opposed to a partnership for a definite term or particular undertaking), "by the express will to dissolve and wind up the partnership business of at least half of the

---

18    Respondents have resurrected this argument on appeal by stating that "[Wickline] by his own actions, *terminated* his alleged partnership interests," and that "[Wickline] . . . *terminated*, indeed destroyed, any partnership with Schweder when [Wickline] elected to pursue tort claims in lieu of a dissolution to enforce his partnership rights."  (Italics added, original italics omitted.)

partners"; or (2) "[o]n application by a partner, a judicial determination that any of the following apply: [¶] (A) The economic purpose of the partnership is likely to be unreasonably frustrated. [¶] (B) Another partner has engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with that partner. [¶] (C) It is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement." (Corp. Code, § 16801; see also *Corrales v. Corrales* (2011) 198 Cal.App.4th 221, 227 [describing certain aspects of the process of dissolution for a two-person partnership].)

Only *after* dissolution occurs does the possibility of a partnership *termination* arise. Specifically, RUPA states that "(a) Subject to subdivision (b), a partnership continues after dissolution only for the purpose of winding up its business. *The partnership is terminated when the winding up of its business is completed.*" (Corp. Code, § 16802, italics added.)[19] RUPA sets forth specific statutory provisions governing the winding up of a partnership. Among other things, in describing the process of winding up, the statute states:

---

19     Subdivision (b) states, "At any time after the dissolution of a partnership and before the winding up of its business is completed, all of the partners, including any dissociating partner other than a wrongfully dissociating partner, may waive the right to have the partnership's business wound up and the partnership terminated. In that event both of the following apply: [¶] (1) The partnership resumes carrying on its business as if dissolution had never occurred, and any liability incurred by the partnership or a partner after the dissolution and before the waiver is determined as if dissolution had never occurred. [¶] (2) The rights of a third party accruing under paragraph (1) of Section 16804 or arising out of conduct in reliance on the dissolution before the third party knew or received a notification of the waiver may not be adversely affected." (Corp. Code, § 16802, subd. (b).)

24

"(a) In winding up a partnership's business, the assets of the partnership, including the contributions of the partners required by this section, shall be applied to discharge its obligations to creditors, including, to the extent permitted by law, partners who are creditors. Any surplus shall be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions under subdivision (b).

"(b) Each partner is entitled to a settlement of all partnership accounts upon winding up the partnership business. In settling accounts among the partners, the profits and losses that result from the liquidation of the partnership assets shall be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account. . . ." (Corp. Code, § 16807.)

It is undisputed that there was never any attempt to undertake a winding up of the partnership between Wickline and Schweder. Indeed, Schweder has consistently denied that any partnership existed, or that Wickline was ever entitled to any interest in GOCO BVI. Schweder, accordingly, has not attempted to participate in a winding up. Thus, without even reaching the question of whether a dissolution might have occurred,[20] because there was no winding up, we conclude that the partnership cannot have terminated within the meaning of RUPA. If the trial court intended to rule that the partnership was terminated pursuant to the requirements set forth in RUPA, it erred.

        b.     *Wickline Did Not Terminate the Partnership By Seeking Damages in This Lawsuit*

As we have explained, Respondents used the word "terminated" to refer to their contention that Wickline terminated the partnership when he sought

---

[20]    As noted above, the trial court stated it was not addressing whether the partnership was dissolved.

legal damages in this lawsuit to compensate him for Schweder's allegedly wrongful repudiation of their partnership.

Respondents' argument was based on *Gherman, supra*, 72 Cal.App.3d 544. According to Respondents, *Gherman* stands for the principle that if an ousted partner brings a legal claim for damages against another partner, alleging that the partner wrongfully repudiated the partnership, "[o]nce the ousted partner 'submits' to the repudiation by bringing claims for damages, the repudiation is irretrievable and the ousted partner destroys the partnership and trades his partnership rights." Relying on *Gherman*, Respondents argued that Wickline made an "irretrievable choice" of " 'submitting' to Schweder's alleged repudiation of the partnership and reducing his purported partnership interest to a claim for damages. As a result, whatever partnership existed has been terminated."

*Gherman* does not stand for the proposition for which Respondents cited it. On the contrary, *Gherman* explains that "[a] plaintiff may plead cumulative or inconsistent causes of action," and when faced with a repudiation of a partnership, under the then-controlling statute, a wronged partner may, among other things, "sue to specifically enforce the partnership," "submit to the repudiation and sue for damages for conversion of his interest, . . . sue for damages for breach . . . [,] or he may sue in tort." (*Gherman, supra*, 72 Cal.App.3d at 565.) Under the specific facts of *Gherman*, however, the plaintiff limited his available remedies because he had "*dismissed* the action for judicial dissolution and an accounting" and thus "made an election of remedies to sue for damages (either in tort or for breach of contract)" that "removed accounting as a possible issue in the case." (*Ibid.*, italics added.) *Gherman* made clear that it was only "once [plaintiffs] elected *not* to assert any partnership rights and to stand *solely* on the cause of action arising out of the repudiation, then as between the parties the cause of action

26

for judicial dissolution and an accounting in equity became moot." (*Ibid.*, italics added.)

*Gherman* does not hold that a partner effectuates a termination of the partnership by merely *including* a cause of action for damages in a lawsuit against a partner who is alleged to have repudiated the partnership. In fact, it states the opposite: "[a] plaintiff may plead cumulative or inconsistent causes of action." (*Gherman, supra*, 72 Cal.App.3d at 565.) Thus, Wickline was permitted to pursue claims for legal damages against Schweder based on Schweder's alleged repudiation of the partnership at the same time that he sought the relief at issue here, namely, a declaration regarding his rights in an ongoing partnership.

Accordingly, if the trial court meant to rule, as Respondents argued, that Wickline terminated the partnership by filing this lawsuit, the trial court erred.

3. *There Is No Merit to Respondents' Contention That Wickline Is Not Entitled to an Opinion Ruling on Whether the Trial Court Erred in Its Declaratory Judgment By Stating That the Partnership Terminated*

As we have noted, instead of trying to defend the trial court's ruling that the partnership terminated, Respondents contend that Wickline is not entitled to an opinion from us, in this appeal, determining that the trial court erred.

Respondents rely on the principle that an appellant must show that a trial court's error was prejudicial to obtain a reversal on appeal. (Cal. Const., art. VI, § 13 [miscarriage of justice requirement for appellate relief].) According to Respondents, even if the trial court might have erred in ruling that the partnership terminated on June 16, 2016, "[Wickline] is blocked from any of the relief he seeks on remand and thus cannot show that he would have had a better outcome but for the trial court's perceived errors."

27

The argument fails for the simple reason that the cause of action at issue in this appeal is a request for declaratory relief. A declaratory judgment does not entail any "relief" aside from a legally accurate statement on the subject on which the declaration is sought. The remedy of declaratory relief "is to be used in the interests of preventive justice, to declare rights rather than execute them." (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909.) "[T]he court may make a binding declaration of these rights or duties, *whether or not further relief is or could be claimed at the time*." (Code Civ. Proc., § 1060, italics added.)

Here, the trial court issued a declaratory judgment stating that the partnership between Wickline and Schweder terminated on June 16, 2016. But as we have discussed, the trial court erred in issuing that declaration. If the trial court meant to use the word "terminated" in either sense employed by the parties, it erred. If the trial court did *not* intend either meaning employed by the parties, the ruling is fatally unclear as to what the trial court might have meant by termination of the partnership. Thus, Wickline's "assertions of error" are not "mooted" as Respondents suggest. On the contrary, Wickline has an interest in obtaining a legally-correct declaratory judgment, and one that is not fatally unclear. That is the relief we can afford Wickline in this appeal, regardless of what use, if any, Wickline may be able to make of a legally-correct declaratory judgment in future dealings with Schweder or in subsequent court proceedings.

Respondents devote extensive discussion to arguing that Wickline will not be able to make any practical use of a legally-correct declaration regarding the status of the partnership he formed with Wickline. As a premise to this discussion, Respondents assume that, on remand, if Wickline obtains a declaration that the partnership did not terminate, Wickline will seek "to enforce his interest in GOCO BVI including a valuation of his

28

interest and an order compelling shareholder distributions," or will seek a "dissolution, accounting and winding up to establish his partnership rights." In his appellate reply brief, Wickline denies that he has ever sought a dissolution. He explains that "[h]e is asking for his interest [in GOCO BVI] to be recognized and enforced," after which he "can then seek to enforce his rights either as a direct shareholder or as a partner in a partnership that is a shareholder." Wickline also states that he "is requesting the transfer of some of Schweder's shares in GOCO BVI pursuant to the oral partnership agreement."

We need not, and do not, decide what relief, if any, might be available to Wickline, in this or any other lawsuit, if he prevails in obtaining a declaration that the partnership he formed with Schweder did not terminate. The trial court made no ruling regarding the relief that might be available to Wickline, and it is not our role to do so in the first instance. In this appeal we are not concerned with whether Respondents have identified any meritorious ground to conclude that Wickline might be prevented from benefiting, in the future, from a declaratory judgment stating that he is a partner in an ongoing partnership. The only issue before us is whether the trial court erred in ruling that the partnership terminated on June 16, 2016. Wickline, like any litigant seeking a declaratory judgment, is entitled to a legally-correct declaration.

We accordingly vacate the trial court's judgment on the declaratory relief cause of action, and we remand for further proceedings. If the trial court chooses to reissue a declaratory judgment stating that the partnership has terminated, the trial court must, at a minimum explain what it means by termination. As we have explained, the record does not support a ruling that the partnership terminated pursuant to the requirements of RUPA (Corp.

Code, § 16802) or by virtue of Wickline's pursuit of legal damages in this lawsuit.

B.     *Reversal of the Award of Costs*

The trial court's award of costs to Respondents was based on its conclusion that Respondents were the prevailing parties.

Code of Civil Procedure section 1032, subdivision (a)(4) states: " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.  If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides . . . ."

Because we have vacated the judgment on the declaratory relief cause of action, which will require the trial court to reissue a ruling on that cause of action, the trial court may, after doing so, conclude that Wickline has "recover[ed] other than monetary relief" in a manner that changes the trial court's view on the award of costs.  (Code Civ. Proc., § 1032, subd. (a)(4); see also *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191, 209 [when the judgment provided both parties with declaratory relief, the parties " 'recover[ed] other than monetary relief,' " giving the trial court "the authority to determine the prevailing party and to 'allow costs or not' "].)  Accordingly, we vacate the award of costs to Respondents, and we remand for further proceedings on that issue.

## DISPOSITION

We vacate the judgment entered on Wickline's sixth cause of action for declaratory relief, as well as the trial court's award of costs to Respondents, and we remand for further proceedings consistent with this opinion.

IRION, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.

31